Thank you, Your Honor. I may please the court. Craig Webster of the Federal Defenders on behalf of David Curry, also present at council table, is co-counsel of Juliana Van Wingerden who assisted in trying this case. I would request two minutes for rebuttal. As Your Honors know from the briefing, there are two issues that I am raising on Mr. Curry's behalf. The first issue is whether or not there was sufficient evidence for a conviction to sustain a conviction on count one. In our opinion, the record does not support such evidence. The second issue is whether Mr. Curry presented some evidence of entrapment on both counts one and two, entitling him to a jury instruction for both counts. And the ability to argue entrapment to the jury as well as holding the prosecution to higher burden of proof beyond a reasonable doubt. Your Honors, turning to count one, it's a highly emotional type of charge. And the evidence in this case was highly emotional. And it's not unexpected that a juror would struggle with what the actual crime is and what they are convicting on. The crime is the use of a means of interstate commerce to knowingly persuade, induce, entice or coerce a minor to engage in unlawful sexual activity. Or attempt to do so. Yes, Your Honor, or attempt to do so. Your Honor, the criminal intent of this case is you look to the subjective intent of the defendant. The statute protects from solicitation. The crime itself is not the willingness to engage in unlawful sexual activity with the minor. If that were the crime, Mr. Curry would be guilty of that crime. Instead, the actual statute protects from solicitation. The criminal purpose is the attempt to achieve the mental act of assent of the minor to engage in that sexual activity. What's unusual about Mr. Curry's case compared to the other Ninth Circuit case law is that first, there's no direct contact with the minors whatsoever in count one. Well, there are no minors to begin with. He was never going to be in contact with any minor because they were all fictitious. Correct, Your Honor. I should say there are no imaginary minors. There was no contact with. It's not unusual. Obviously, typically, it's a sting operation. An officer is portraying himself as a either a minor or sometime as an intermediary. But here there was no sort of there was no direct contact with a minor of any type, real or imaginary. That's not necessarily unusual. Often you will see an officer portraying it as an intermediary. But here there was no indirect contact either with the minors. And that's what sets this case apart in count one. I think if you look at count two versus count one, you see more traditionally of what you would find in committing this crime, whereas in count one, there was never any sort of I think you've got some case law that you need to get past. That is to say, I think we have some cases where there has been communication with the adult. And nonetheless, we've convicted under this statute. Yes, Your Honor. There are quite a few cases where we have that. But there's always something in additional. For example, U.S.B. McApagal. I'm not sure if I'm pronouncing that right. It's a Ninth Circuit case, I believe about 2022. In that case, you have the mother acting very similar set of facts. I think it's 11 and 13 year old daughter. And eventually you have travel. But with that, the defendant in that case is sending photos of himself, sexual type photos, and asking the mother to show those to the daughters. In all of those, you also have the person shows up with gifts and is presenting gifts to the actual child. You don't have that here with Mr. Curry. There's never is. There has to be some form of effect on the minor for that persuasion, even if it's just through indirect contact. In some way, he has to be trying to persuade, induce, entice or coerce a minor. There must be some sort of effect based on that communication. And in count one, there is none there. At all times, the undercover officer steers the ship. She directs the actions in everything he does is in response to what the officer is requesting. And he never in any way tries to communicate with the minors through that through that officer. But counsel, what do I make then of the fact that he drove 80 miles to see them? He bought in the flavors that the mother told them the kids liked. What are we to do with that? Two separate separate issues there, Your Honor. I think first, as far as the travel goes, I think in many ways, the crime has been committed before you actually have the travel because the crime is not the willingness to engage in the sexual activity. It is actually the persuasion using the means of Internet. So I think that's already occurred beforehand. Your Honor, as far as the flavored lube, I think that is the closest Mr. Curry gets here. And obviously, that is sort of our our biggest problem. But I think it's different. I think it's different from the other cases because he is responding to the officer. The officer brings up condoms. Condoms are a must, she says. And she says, oh, yeah, I forgot to grab I forgot to grab lube before. And so he's responding to that. He's not he's not using that in a means to persuade or induce the minor to engage in sexual activity. He's simply responding to the direction of the officer. And I think that's what's different. I think it's I think it walks right up to the line, but I don't think it crosses. I think that's more in line with mere preparation as opposed to actually taking the step. Your Honor, in just kind of your honor's going back to that, there is no sort of indirect contact here. The officer is in control. The officer is directing the action at all times and count one. He is responding to her to her requests. And you have to look at what does he not do? A good case is United States v. Eller, where once again, there's an intermediary. It's not a mother, but it's an adult intermediary. And he is haggling over price. He's telling him, I want the minors to appear in this. He asks to switch up a minor instead of an adult. And he's negotiating what he wants done. And so once again, he's there's the persuasion through the intermediary. As far as the travel, as I said before, I don't think, or I guess also there's at no point does he request anything to be done. Mr. Currier, even when you wait, it took him 90 minutes to get in the car and start driving. You haven't gotten the lube. Yes. Yes, sir. I wish you wouldn't have done that. But you're right. I think what that shows is a willingness to engage in the sexual activity. But it doesn't show it doesn't show him committing this crime. The crime here is the use of the means of interstate commerce to to persuade the minor. It's to try to induce them in some way. And what you have is even when he's arrested, he gives his interview, he acknowledges that he's had fantasies of this type. But he also says that he had hoped to persuade the mother to engage in sexual activity that that's what he was seeking originally when he responded to the Craigslist ad. And even when Mr. Curry, even when Mr. Curry arrives at the house, he's still following directions. He's told to sit down. He sits down. He's told to take his shoes off. He takes his shoes off at no point. Does he in any way engage in trying to persuade the minors? He is a willing participant, but that's not that's not the crime, Your Honor. And so, as I do think to me, the reading of the statute, it makes more sense that the crime would have actually been committed prior to the travel itself because of that. I think that the crime is the the intent to persuade using that means of interstate commerce. So let me just clarify then in that sort of situation, if the accused never speaks to the minor, whether it's a real minor or someone pretending to be a minor, are they never going to be guilty? No, not not necessarily, Your Honor. If if they are using the third party, the intermediary, to try to persuade or try to induce, if there if there's some way that that third party is, the minor has to be indirectly affected by that persuasion. Like, so in some way they have to he he needs to be communicating in some way to try to convince them to have the minor to have sex. And so that if that doesn't occur, then then they're I don't see where where the crime is. So your argument basically is the mother, supposed mother, represents that the children, the supposed children, are already willing. There's no persuasion necessary. Yes, Your Honor. Yes. And I think that is also unique in this set of... Sure, I agree with that argument. Gets you where you want to get. But I think that's your argument. It is, Your Honor. Thank you for for leading me down that direction. Yes, yes, Your Honor. I I believe that that is the case. Could you address this, your second argument, and that is the entrapment. I think there's at least a plausible argument as to entrapment as to count two. Not as to count one, but as to count two. And and to follow on on that, if there is predisposition shown by the first event, the Kelly event, is that enough? Or do you need to look at the Cortez factors independently for the second crime? Your Honor, that's a good question. I believe that here you do have the initial contact is with is with the November 16, 2019 incident. I I think that is what triggers the entire the entire chain of events. It's a three week period in between the two violations. And I really do think it's sort of a chain of of events that are all occurring from that initial contact. I think there still is a lack of predisposition. I think you can still go through the factors on Mr. Curry's case for count two alone and find that he did not have the predisposition to commit the crime. Because I think, as we've argued, I don't think he actually committed the crime before that. But if you if you look at it, count one, you have a lonely, desperate, sort of sad man looking to engage in sexual activity. He responds. He's seeking he's seeking sexual relations with an adult mom or an adult woman. Three weeks later, they come back at him again. Once again, so now he's been sort of publicly shamed, humiliated. He's even more depressed than he already was. He goes on an adult website. He posts to have a sexual relationship with an adult woman. And once again, the government comes at him and they once again, they kind of pull him into this thing. Is there anything in the record that tells us that the second time around the government knew that they were dealing with someone who'd been involved the first time around? Or is this just these two independent sting operations? Your Honor, that's a great question. So there's something it originates to testimony at trial by the officer was that it originates as two separate sting operations. And then during that process, they do it, which is in the record doing that during that process. They recognize Mr. Curry from the November 16th, 2019. But when but when in the second case, the second sting operation, when the officer immediately responds, I got an underage person for you. The officer at that point did not know that Mr. Curry was already in trouble with respect to the first underage. Your Honor, so that's what the officer testifies to. But something that we struggled with at the defense as the defense at trial was in his post arrest interview, they ask him about his sexual preferences and he goes through something, talks about how he, pardon my language, masturbate. He reviews porn, he masturbates, but he in particular likes redheaded females, redheaded adult females, which is a little unusual. And very quickly, a photo within that first day on the second count is a photo of a redheaded detective. Now, they say there's no link there, but we always found that suspect and that's something we would have argued to the jury with the entrapment. And the question, the legal question we got in front of us with respect to count two is whether he's entitled to the instruction. Strikes me, as the head, I've been the district judge, I would have given the instruction. The question is whether it's error or not to have given it. Warning to the government, I'm pretty close on that question. Your Honor, and I do think it should have been given. There was some evidence provided it can be weak and be doubtful credibility, but in many ways that shaped our entire argument of how we were arguing the case. And when we weren't allowed to argue the entrapment offense, it changed the way we had to address both count one and count two. And so that changed the entire nature of how it would have been argued. At what point do you know you're not allowed to? What point did the district judge tell you you weren't going to get the entrapment instruction? Your Honor, I apologize. I'm trying to remember. I believe it was, um, I believe it was that after the presentation of, I believe, as we were going to jury instruction. So I believe it. Oh, so that did not affect your argument and your evidence of trial then? That's my recollection, Your Honor, but it affected the way we. Now, the reason I ask it that way is you always, you maybe inadvertently suggested that it affected your trial strategy, but it sounds as though you didn't know about, you weren't going to get the instruction until the end, which of course is pretty typical of where the trial goes. You don't do the instructions until you're pretty close to the end. Yeah. Okay. I get it. Thank you. Thank you. Thank you, Your Honor. Counsel, since you were answering our questions, I'm going to put a minute and a half back on for you for rebuttal. Thank you. Mr. Herzog. Good morning, Your Honors. May it please the court, David Herzog of the United States. I was not trial counsel below. I want to just first turn to Your Honor's questions about the entrapment instruction on count two. First, under Spence, this court's case on whether or not the entrapment instruction should be given, the defendant has to show some evidence of both inducement and lack of predisposition. And just chronologically here, the defendant's post-arrest statement was after the first arrest. So by the time the second contact even had happened, he had already admitted that for years he had had a prior sexual interest in children, which is the thing he would, to show predisposition. But that doesn't mean there was no inducement. That is to say, on count two, he sets out on an adult website and immediately the sting operation comes back with a minor. That's correct, Your Honor. He didn't set out the second time around looking for a minor. So it sounds as though, for me, that's already enough evidence of inducement. I understand all the other things, but it sounds as though he's being induced. It wasn't very hard to get him there. I get that. But it sounds like he was induced. That's not what he was looking for when he went onto the website. And if the tests, Your Honor, were mere opportunity, is enough for inducement, then I think the court might have a better point. Opportunity. I didn't say opportunity. I said inducement. He was induced. He says, I'm looking for an adult. The sting operation says, hey, I got a minor for you. And then, of course, he takes the bait. And he does it immediately. I get that. I hear you, Your Honor. My point on inducement is that inducement is opportunity plus something else. That's Jacobson and Pullman. Plus inducement. That is to say, it was the government that starts out with, I got a minor for you. He did not start out saying, I want a minor. He starts out, I want an adult. Yes, Your Honor. The case law on what constitutes inducement is not what Your Honor's talking about, which is mere opportunity. It is opportunity plus pressure. I'm not talking about opportunity. What do you mean opportunity? If I understand the court correctly, what the court's saying is on the second operation, when the defendant said, I'm looking for an adult, and the agent, the undercover federal agent said, I'm actually a minor. I'm 13, but I'm very mature. At that point, the government had made an opportunity. I see what you're saying. The court's case law is that to meet the inducement standard, it's higher than mere opportunity. It's inducement plus pressure. I would say opportunity, but I might say something stronger. It made an offer. That is to say, I am a minor. Hey, let's go. It wasn't just minors out there in the world in some abstract fashion. It was, here is a minor. I am offering you a minor. Yes, and I would submit to the court under Pullman and the Supreme Court's case in Jacobson. That is opportunity. It is not inducement because inducement requires opportunity plus something else, which is typically excessive pressure. So when the officer says, I'm 13, but very mature, is that a problem for you? And the defendant continues to engage. I don't think this legal standard has been met of opportunity plus something else. What if you added to that that the officer pursues him for three months or however long it was with texts, with photos, and that he ultimately never shows up beside having the opportunity to do that on three separate occasions? Isn't that some evidence that would allow the jury instruction? I would submit to the court respectfully, no, for two reasons. The first is that I continue to think that what happened in the entire course of the second operation with Officer Dramus Sonny, all of that was, as the district court found, putting a bait on a hook in the water. There was no excessive pressure, offers of money, something else in addition to opportunity. And that's what this court and the Supreme Court require for inducement. So on the two prongs, inducement, lack of predisposition, even on inducement for Sonny, I would submit to the court that the facts do not show anything beyond putting the bait in the water, which is what the district court found. So I would submit to the court respectfully, no, that the defendant failed to establish that he was induced. We all agree the opportunity was put forth when the officer responded, I'm 13, but I'm mature. And the defendant continued to engage, continue to engage. Counsel, let's talk about U.S. versus Cortez, our case here in the Ninth Circuit, where we consider five factors. Let's go through those factors. Okay. First one, the character reputation of the defendant, including any prior criminal record. Well, it's meant to the court that for the second one, what the district court was relying on was that less than a month earlier, the defendant had showed up in Yakima to have sex with two Although he did not have a prior conviction, his conduct under the first Cortez factor is, I think, favoring the government because he had just done it. He had just showed up to have sex with an 11-year-old and a 13-year-old. Well, you know, that doesn't say conduct. It says character or reputation, including prior criminal records. So you can't quite get to record. You've got to charge. And it doesn't say conduct. You said conduct, but that does not what the factors said. Your Honor, I would submit to the court that he's a person who has the character of a sexual interest in children that he had acted on. Yeah. Okay. Taking with word conduct. Okay. Okay. Number two, whether the suggestion of the criminal activity was initially made by the government on the second set. What the defense, what the defense, what the officer said was, I am 13. Is that going to be a problem for you? But wasn't Sonny responding to an ad that he placed for people 21 or older? I think it was 21 to 99 or 21 to 77. Yeah. Yes, Your Honor. And that's how this works, right? A defendant can't go on and say, I'm looking for sex with a 13-year-old. He has to say, I'm looking for sex with an adult. And then whoever responds indicates what they are. But listen, you lose on number two. Okay, move on. Yeah. Whether the defendant was engaged in the criminal activity for profit. I don't think that's, I don't think that cuts one way or the other on this one. Okay. Evidence reluctance to commit the offense only overcome by the repeated government inducement or persuasion. I'm not with you on that because I feel like from what I've read, he kept saying, oh, I really hope this isn't a sting operation. Oh, I'm not really sure I want to do this. And then he didn't even show up. How many times was it that they tried to set an appointment? The reason he didn't show up is that his mother got sick and he went to the hospital. It was not that he said, oh, I could never. He had a factual predicate for not showing up, which was that he was busy. So the extent you're looking at intent of mind for not showing up, he was very clear. The reason he did not show up is that he was at the hospital with his mother. And the second time? Wasn't there the second time he was supposed to show up and he didn't show up? Yes. And I don't think the record is clear, as clear as to why he did or did not. Okay. And then the nature of the inducement or persuasion supplied by the government. So was it just one time? Hey, I'm 13, I'm mature. I mean, what do I make about the two months worth of texting back and forth? Well, I think the court can look at those two months of texting back and forth and see the defendant is sending the person who has said she is 13 years old, videos of his penis, videos of him ejaculating to complete ejaculating after masturbating, videos of him talking about asking her about her pubic hair, asking her what kind of sex he's going to have with her under Getsky. That is, that is enticing conduct. So I would submit to the court that the idea that this defendant was overcome by the kind of pressure that constitutes an inducement under Pullman, six months of somebody who wanted to get married and was looking for a family and was conditioned on, if you want to have sex with me, you have to have sex with my kids in Pullman. That just does not exist here. This defendant is willing and ready. And I would submit to the court under Jacobson, the Supreme Court's case on entrapment, the leading case on this. What the Supreme Court says is look, in a sting operation, prompt willingness to engage in the crime is often going to say there was no entrapment. You know, if this were argument to the jury and the jury had convicted, you totally win. But the question is whether or not the jury's asked to decide the question. That's a much lower threshold. Your Honor, it is. And this court has articulated that threshold in Spence when this court said the defendant has to show some evidence on both. The defendant has to show inducement and lack of predisposition. I would submit to the court, it sounds like I'm not winning this panel over on inducement on the second set. I submit that I should, but if I am not, I still win on predisposition. Because this defendant, by the time he had communicated the first moment with Sonny, he had already admitted, I have a sexual fantasies about minors since my 20s. Hannah Montana, sex with the younger, is what he said in his post arrest interview. That was under Jacobson prior to his initial contact on the second sting. By definition, that is predisposition. And that's what Judge Bastian found. Okay. And that's, and so is your argument that we don't even need to think about the Cortez factors because the predisposition, which I think is what Judge Bastian was thinking about, predisposition, that trumps everything? I would say the government wins both ways because this court has held, and the Supreme Court has held that, the defendant has to show some evidence, that's Spence, some evidence on both. Here, as soon as the defendant admitted in his post arrest statement, I am predisposed, that was it. And what's your best case for that? Jacobson? Spence? Spence. But I think Jacobson also will get you there. But then, even if the court then looks to the reluctance factors, reluctance is undermined by predisposition, right? If he is predisposed to have sex with a 13-year-old, he is not as reluctant to have sex with a 13-year-old. So I submitted to the court that although this court should not get to it because he loses on predisposition, as Judge Bastian found, and that's a factual determination, abuse of discretion, he also, if the court then does do the Cortez factors, he still loses on reluctance because he's not reluctant, he's predisposed. He said since his 20s, he has had sexual interest in children. And what he said in the first interview was that I've never acted on before, indicating that he was acting on it then. And that's in November. That's right, I think, December 12th for the November conduct, well before the New Year's Eve conduct with Sonny. So both factually and legally, the court was correct not to give the entrapment instruction. And I want to say also, I think Judge Bastian evaluated the right law and came to the right facts on an abuse of discretion standard. I don't think based after, look, this would be a different case if the defendant's post-arrest statement had not included, I've had a sexual interest in minors since my 20s. If he had not said that, the government would not have evidence of predisposition, except in the second sting, the first sting, right? The evidence that he had a sexual interest in children in the second one is that he showed up to Yakima, 80 miles away. That shows his predisposition to have sex with minors also. So by the time you get to the Sonny incident, the second one, not only had he admitted his prior sexual interest since his 20s, he showed up in Yakima to have sex with an 11 and 13-year-old. That is also his evidence of predisposition. But once you have the interview where he admits it from his, since his 20s, that is it. At that point, the defendant has not shown some evidence of lack of predisposition. And for that reason, underspends, he doesn't get the instruction. Obviously, I want to remind the court, that is, of course, on an abuse of discretion standard, whether or not the instruction is proper, if the court gives the entrapment instruction, this court reviews de novo, was the instruction right? But when it's a factual determination, does the defendant get the instruction? That's abuse of discretion. Because it's Judge Bastian who has listened to the interview, dealt with the briefing, heard trial, and I think we were in Rule 29 context, for your honor, for the timing. And so Judge Bastian is in the best position to determine, as he did several times on the record, cited throughout the briefing, the government put the fish, put the bait on the hook and Mr. Curry swept up to swim, swam up and ate it. So I submit to the court that even if this court is concerned about inducement on the second sting, the United States would say there was no plus factor, it was opportunity and no more, based on the defendant's responses. But even if the court does find inducement on the second sting, that it was proper for the court not to give the instruction because the defendant loses on predisposition. And under Spence, that is enough. That is the ballgame. Once he fails, show some evidence on both. As a practical matter, he was convicted on both, sentenced on both, sentences to run concurrently. So I'm not sure what the practical difference is if we reverse on count two. This court has held that any, that, I mean, obviously we would send it back. I guess that the court would. But I would submit to the court that I think you're right, as a practical matter, the conviction on what it sounds like the court's fine with would be count one. That would stand. I see my time is running short. I do want to address the enticing issues, although it seems the court doesn't have as much trouble with that. This is Meek, Macabagal, and Eller. In Macabagal, it's the exact same facts. The mom says, only in communication with the mother, she says, I want the defendant to teach my girls about womanhood. Almost word for word about what was said here. And that was affirmed. I think that my friend, Mr. Webster, just has an awful lot of trouble getting around the precedent of this court. The other one that I want to just highlight for the court is Getsky, where there's no travel. The kid's in Montana. The defendant's in Louisiana. It's just letters that the kid never sees. The mom intercepts all those letters in Getsky, and this court says that, and this is the test, when the defendant initiates a conversation about sex, we have that, describes the sex acts, we have that, and proposes a rendezvous, he moved it forward to that night. He has crossed the line from preparation, and as this court said, nothing more is required. That's Getsky in 2007, and then reaffirmed. When the defendant does those things, nothing more is required. So on the enticement, on the challenge to the enticement sufficiency of the evidence, this court's cases, I think, firmly foreclose that argument. That's essentially the government's argument. I would just highlight for the court, and I say this as a former law clerk to appellate judges, that the record that I think the court should review for the enticement is 4 ER 677, and following, that is the chats, that is the defendant talking to the mother, who is the gatekeeper for the child, as the court has said, that's Meek in Macabagal, that what he's trying to do is convince the sex with the child. That is, I'll use more foreplay with Anna, because she's a minor. May I have both of them at the same time, or just one of them? That's sex with the children, not with the mother. And at one point, the defendant catches himself up, because he says, is kissing something you want to experience? And the undercover says, this isn't for me, this is for my girls. And the defendant's next text is, yes, I'm sorry, I meant, is it something you want them to experience? Meaning the children. So the argument that he was trying to have sex with the adult, and not the children, I think is foreclosed by the defendant's own text messages and communications. As this court has found, communications are enough. You don't need to it's over on substantial step for attempt. Finally, I would just highlight what Your Honor remarked on, which is the watermelon lubricant, right? It wasn't the parent's desired flavor, it was the child's desired flavor. So when the defendant said, do you want me to pick, and the defendant initiated this part of the conversation, shall I pick up any particular flavor? And the mother says, Sam, the 13-year-old, Sam likes watermelon, get that if you can, if not anything but strawberry. And the defendant then goes to his preferred adult megastore castle, purchases watermelon, lubricant, and condoms, and shows up with them. This is a man who wanted to have sex with the 13-year-old, not with the mother. The evidence of that is clear, certainly a rational jury could so conclude on this record. Thank you, counsel. Thank you, Your Honor. You're well over time. Okay, Mr. Webster, I said I'd give you a minute and a half. Thank you, Your Honor. I will just very briefly wrap up. Your Honor, first, you had suggested about our trial strategy with entrapment. And, Your Honor, we did, the questioning that we asked of the officers during the trial, we were trying to lay the foundation for an entrapment defense and to bring that together at closing argument. And so we had laid that foundation, but were making that argument. I think through Jacobson and Pullman, I disagree with my colleague here. I think that actually flips the other way. As far as the meeting, or I guess Mr. Curry having fantasies in acknowledging that in his post-Miranda interview, he also immediately said he always pushed that out of his head. That was something that he said he never had intended on acting upon. Acknowledging that it was wrong and acknowledging that he could get caught up in something of this nature, and then they keep going back after him. And then finally, just addressing the issue with the medical situation with the mother in that particular meeting not taking place. There was still another two months of continued conversations with multiple suggested meetups that he never followed through on. If Your Honors have no further questions, I'll leave it there. All right. Thank you, counsel. And thank you to both of you. This matter is now submitted.
judges: FLETCHER, ALBA, Orrick